James C. Shah (CA Bar No. 260435)
Kolin C. Tang (CA Bar No. 279834)
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Phone: 866-540-5505
Fax: 866-300-7367
jcshah@millershah.com
kctang@millershah.com

Timothy N. Matthews (*pro hac vice* forthcoming)
Dylan Altland (*pro hac vice* forthcoming)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
tnm@chimicles.com
dda@chimicles.com

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNA ROSCAMP WILDER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GAMESTOP CORP., D/B/A GAMESTOP INC.<br><br>Defendant. | Case No. '26CV0224 AJB JLB<br><br>**CLASS ACTION COMPLAINT**<br><br>Demand for Jury Trial |

Anna Roscamp Wilder ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel brings this class action complaint against Defendant GameStop Corp., d/b/a GameStop Inc. ("GameStop" or "Defendant"), alleging the following based upon personal knowledge as to her own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiff's counsel.

**PRELIMINARY STATEMENT**

1. This case concerns GameStop's bait-and-switch deceptive advertising: offering a premium collectible bonus to entice consumers to pre-order the video game *Silent Hill F* when GameStop never intended to provide the bonus to the vast majority of those customers and continued to advertise and sell pre-orders long after its available supply of bonus gifts was exhausted.

2. *Silent Hill F* is the first mainline installment in the *Silent Hill F*ranchise in more than a decade and was among the most anticipated video-game releases of 2025. The game generated substantial pre-release interest, and retailers, gaming media outlets, and online communities widely promoted pre-order incentives in the months leading up to launch.

3. GameStop, one of the largest specialty video-game retailers in the United States, routinely uses exclusive pre-order promotions to drive early sales and strengthen its position in the marketplace. Pre-orders are a boon to retailers, like GameStop, because customers pay for the product often months in advance, thereby giving the retailer upfront cashflow and the time value of money.

4. For *Silent Hill F*, GameStop advertised a "GameStop Exclusive Steelbook" as a "bonus" for customers who pre-ordered the game. A "steelbook" is a premium, limited-edition metal case for movies and video games, prized by collectors for its durable, high-quality feel and unique, often exclusive artwork that can feature special finishes like embossing, making it a desirable collectible packaging.

5. Beginning by at least July 2025, this promotion appeared across GameStop's website, mobile app, email solicitations, and in-store signage, all stating: "Pre-order today to get the GameStop Exclusive Steelbook!"

6. Upon information and belief, GameStop sold thousands, if not tens of thousands, of pre-orders. GameStop never intended to provide all those consumers with the promised Steelbook, however. GameStop's advertising included a small print disclaimer, "while supplies last," but GameStop continued to advertise the promotion long after the number of pre-orders exceeded the available supply of Steelbooks.

7. Moreover, when the game was finally released in late September, GameStop did not distribute the SteelBooks to consumers on a first-come, first-served basis according to when they placed their pre-order. Nor did GameStop deliver any Steelbooks to consumers who placed their pre-order online for delivery. Instead, GameStop distributed a small number of SteelBooks to physical stores and told consumers to essentially "go find one."

8. Many stores received no Steelbooks at all. Those who pre-ordered in person arrived on release day only to be told that their stores had not been allocated any Steelbooks or had received far fewer Steelbooks than the number of pre-orders taken. Consumers nationwide reported the same experience, and online discussion forums quickly confirmed that the Steelbook bonus was effectively unavailable across the country.

9. As a result of GameStop's advertising and promotional practices, consumers — including Plaintiff — were induced to pre-order *Silent Hill F* from GameStop based on a promised bonus that GameStop either knew or should have known it could not provide. In so doing, Defendant violated the: (i) California Consumer Legal Remedies Act, Civil Code § 1770 *et seq*. ("CLRA"); (ii) California False Advertising Law, Business and Professions Code § 17500 ("FAL"); and (iii) California Unfair Competition Law, Business and Professions Code § 17200

("UCL"); and further (iv) breached the implied covenant of good faith and fair dealing; and (v) committed fraud in the inducement.

## THE PARTIES

10. Plaintiff Anna Roscamp Wilder is a resident of Ramona, California. As described below, Plaintiff pre-ordered and purchased the video game *Silent Hill F* from GameStop.

11. Defendant GameStop Corp. is a corporation organized and existing under the laws of the State of Delaware.[1] It maintains its corporate headquarters and principal place of business at 625 Westport Pkwy, Grapevine, TX 76051.[2] GameStop is registered to do business in the State of California.[3] GameStop "is a leading specialty retailer offering games and entertainment products through its thousands of stores and ecommerce platforms."[4] As of February 1, 2025, GameStop operated 3,203 physical storefronts, 2,325 of which were located in the United States.[5]

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which the proposed Class consists of at least 100 members and at least one Class member is a citizen of a state different from

---

[1] De File No. 3954875.

[2] *See* U.S. Securities & Exchange Commission, *[GameStop Corp. — EDGAR Company Filings (CIK 1326380)]*, https://www.sec.gov/edgar/browse/?CIK=1326380&owner=exclude (last visited Dec. 10, 2025).

[3] Ca File No. 2469474.

[4] GameStop Corp., Quarterly Report (Form 10-Q) (Nov. 1, 2025), at 6, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001326380/000132638025000098/gme-20251101.htm#fact-identifier-607.

[5] GameStop Corp., Annual Report (Form 10-K) (Nov. 1, 2025), at 1, available at https://www.sec.gov/Archives/edgar/data/1326380/000162828025014731/gme-20250201.htm

Defendant. The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

13. This Court may properly exercise personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in California, including by registering with the California Secretary of State to do business in the state, operating numerous retail stores throughout the state, and soliciting, processing, and fulfilling online orders from California consumers. Defendant directed the at-issue advertisement to consumers in this District, accepted pre-order payments from consumers in this District, and the injuries alleged herein were suffered by Plaintiff and Class members located in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District, Defendant transacts business within this District, and Defendant is subject to personal jurisdiction in this District.

## **FACTUAL ALLEGATIONS**

### A. **Industry Background: Retailer Use of Pre-Order Incentives**

15. For decades, the video game industry has relied heavily on "pre-orders"—advance purchases placed by consumers before a game's release date.[6] Pre-orders first emerged in the 1990s as a way for retailers to estimate demand for upcoming titles and to secure early sales in an increasingly competitive market. Over

[6] *See, e.g.*, GameStop Corp., Registration Statement (Form S-1) (Aug. 24, 2001) at 32, available at https://www.sec.gov/Archives/edgar/data/1157644/000095012301505960/y52657s-1.txt ("[W]e offer our customers the opportunity to pre-order products in our stores or through our web site prior to their release.").

time, pre-ordering became a standard industry practice, widely promoted by both retailers and game publishers.[7]

16. Pre-orders serve several commercial functions. They provide retailers with cash flow, advance commitments that help forecast sales, determine inventory allocations, and justify shelf space. *See* GameStop Corp., Annual Report (Form 10-K) (Jan. 28, 2017) at 6 ("Pre-orders are tracked at individual stores to distribute titles and **capture demand effectively**.").[8] They also shift risk from retailers to consumers by converting uncertain future sales into guaranteed transactions before reviews, gameplay footage, post-release information, or seasonal promotions become available. *See id*. ("This merchandise management is essential because **a significant portion of a game's sales are usually generated in the first days and weeks following its release**.").

17. To encourage consumers to commit early, retailers often offer exclusive "pre-order bonuses," such as collectible items, digital content, or physical merchandise. These bonuses are prominently advertised and play a material role in consumers' purchasing decisions, particularly for highly anticipated games.[9] Over the past two decades, such exclusive, retailer-specific incentives have become an established and expected feature of pre-order marketing within the industry.

18. The use of exclusive bonuses allows retailers to compete directly with one another. Because different retailers frequently offer different incentive items, consumers often choose where to pre-order a game based on the specific bonus

---

[7] *See, e.g.*, Akshon, *The Most Accepted "Scam" In Gaming* (2025) https://www.youtube.com/watch?v=aAA9ZgvchDs (last visited Dec. 10, 2025).

[8] Available at https://www.sec.gov/Archives/edgar/data/1326380/000132638017000046/a10k-fy16q4.htm.

[9] Luke Plunkett, *Stop Preordering Video Games* (June 25, 2015), https://kotaku.com/stop-preordering-video-games-2-1713802537 (last visited Dec. 10, 2025).

advertised. Retailers understand this dynamic and strategically deploy exclusive bonuses to drive early sales, attract foot traffic, and differentiate themselves from competitors.[10]

19. As pre-ordering became more prevalent, pre-order incentives evolved from simple reservation mechanisms into a primary marketing strategy. Retailers increasingly tied exclusive items to pre-orders, transforming these bonuses into valuable and expected components of major video-game releases. Today, pre-order bonuses are generally viewed by consumers as integral components of the transaction and part of the value they receive when placing a pre-order.

20. Because of the economic importance of pre-orders, retailers track pre-order volume and bonus-inventory allocations in real time. As a result, retailers such as GameStop know, at all times, whether they possess or will possess sufficient bonus inventory to fulfill the pre-orders they continue to solicit.[11]

### B. The "Silent Hill" Franchise and Anticipation for "*Silent Hill F*"

21. Silent Hill is one of the most recognized and influential franchises in the survival-horror genre of video games. First released in 1999 by Konami, a video game developer, the original Silent Hill title helped define the genre by emphasizing psychological tension, atmosphere, and narrative complexity rather than traditional action-oriented gameplay.[12] The franchise has since become a longstanding cultural property within the gaming community.

---

[10] *See, e.g.*, Amazon, *Silent Hill f - PlayStation 5, Amazon Exclusive Day One Edition*, https://www.amazon.com/Silent-Hill-PlayStation-Amazon-Exclusive-Day/dp/B0F1C14LY8?th=1 (last visited Dec. 10, 2025) (offering a *Silent Hill F* pre-order promotional poster).

[11] GameStop Corp., Annual Report (Form 10-K) (Jan. 28, 2017) at 6 ("Pre-orders are tracked at individual stores to distribute titles and capture demand effectively. This merchandise management is essential because a significant portion of a game's sales are usually generated in the first days and weeks following its release.").

[12] Silent Hill Wiki, *Silent Hill (franchise)*, https://silenthill.fandom.com/wiki/Silent_Hill_(franchise) (last visited Dec. 9, 2025).

22. Despite its widespread popularity, the franchise entered a prolonged period of dormancy following the release of Silent Hill: Downpour in 2012. In the years that followed, fans repeatedly expressed interest in the development of a new mainline entry. Industry speculation, media coverage, and online discussion of a potential continuation grew steadily as Konami began reintroducing Silent Hill properties through remasters, film announcements, and ancillary projects.

23. Against this backdrop, Konami announced *Silent Hill F* on October 19, 2022, during a publicly streamed presentation, identifying it as the first new mainline installment in more than a decade.[13] The announcement generated significant anticipation among fans, gaming media outlets, and retailers

24. On March 13, 2025, Konami released additional details about *Silent Hill F*, including a second trailer, during an official livestream event. On June 4, 2025, Konami announced the game's release date—September 25, 2025—through a third trailer broadcast as part of a PlayStation presentation.[14]

25. The game's launch was commercially successful. According to Konami, *Silent Hill F* sold more than one million copies within the first day of release.[15]

### C. <u>GameStop's Marketing of the *Silent Hill F* Steelbook Bonus</u>

26. In July 2025, GameStop began promoting an exclusive pre-order incentive for the video game *Silent Hill F*.[16] As part of its marketing campaign, GameStop represented that customers who pre-ordered the game through its retail

---

[13] *See id.*

[14] IGN, *PlayStation State of Play June 2025: Everything Announced* (June, 4 2025) https://www.ign.com/articles/playstation-state-of-play-june-2025-everything-announced (last visited Dec. 8, 2025).

[15] *See* Konami, *[News Update — Sept. 29, 2025]*, https://www.konami.com/games/corporate/ja/news/topics/20250929/ (last visited Dec. 9, 2025).

[16] *See* Noisy Pixel, *Silent Hill f GameStop Pre-Orders Include Exclusive Steelbook Bonus* (July 17, 2025), https://noisypixel.net/silent-hill-f-gamestop-steelbook-bonus/.

stores or website would receive an exclusive *Silent Hill F* "Steelbook." A Steelbook is a trademarked metal disc case commonly used in collector's editions and premium releases.[17]

27. The promotion appeared across GameStop's online storefront, mobile application, direct email solicitations, and in-store signage. In every format, the advertisements stated that customers who pre-ordered *Silent Hill F* would "get" the advertised bonus item.




28. GameStop's advertisements included a small-print statement that the incentive was available "while supplies last." GameStop did not disclose the quantity of pre-order bonus items available, nor did it inform consumers when supplies were exhausted.

29. The limiting language in GameStop's advertisements appeared alongside affirmative representations assuring consumers that pre-ordering would secure the promotional item. These representations included statements such as "Pre-

[17] *See* SteelBook, *About SteelBook*, https://steelbook.com/about-steelbook/ (last visited Dec. 9, 2025).

Order Today and Receive: *Silent Hill F* Steelbook" and "in-store customers: bonus items will be available at time of game pickup," which affirmatively conveyed that customers who pre-ordered would receive the Steelbook notwithstanding the purported qualification.




30. GameStop also promoted the pre-order incentive through its employees. Customers who inquired about the promotion in stores were informed that the pre-order bonus would be available to them upon release if they placed a pre-order with GameStop.

31. GameStop's pre-order incentive applied to both physical and digital pre-orders placed through its retail locations and online platform. Customers who placed

a pre-order were required to pay either a deposit or the full purchase price to reserve a copy of the game and secure the advertised incentive.

**1. GameStop Accepted Pre-Orders Despite Lacking Sufficient Steelbook Inventory**

32. Upon information and belief, GameStop knew that it possessed—or would possess—only a limited quantity of Steelbook cases, and that this quantity was insufficient to fulfill the number of pre-orders it was soliciting. Nevertheless, GameStop continued to accept pre-orders and to advertise the Steelbook incentive even after the number of preorders exceeded its available inventory.

**2. GameStop Continued Promoting the Steelbook After Inventory Was Exhausted**

33. The pre-order incentive advertisement remained both active and publicly displayed on GameStop's website up to and including September 24, 2025, the day before the game's official release. In fact, on that same day, GameStop even sent targeted email advertisements to consumers with the subject line: "**Pre-order *Silent Hill F* & get a scary-cool Exclusive Steelbook!**"[18] The email contained the same promotional image and a "Pre-Order Now" button, reiterating the availability of the Steelbook incentive.

[18] Email from "GameStop@emails.gamestop.com" dated Sept. 24, 2025 at 11:20 AM (on file with counsel).




34. Many consumers paid GameStop in advance and selected GameStop as their retailer specifically because of the advertised Steelbook pre-order incentive, foregoing other retailer-specific promotions.[19]

---

[19] A consumer seeking to pre-order *Silent Hill F* had several options besides purchasing through GameStop. For physical copies, Amazon offered its own retailer-specific promotion, including an exclusive two-sided poster. *See* Amazon, *Silent Hill f - PlayStation 5, Amazon Exclusive Day One Edition*, https://www.amazon.com/Silent-Hill-PlayStation-Amazon-Exclusive-Day/dp/B0F1C14LY8?th=1 (last visited Dec. 10, 2025). Consumers could also have obtained standard physical editions from other major retailers such as Best Buy and Target. *See* Best Buy, *Silent Hill F (PlayStation 5)*, https://www.bestbuy.com/product/silent-hill-f-playstation-5/J76T5HJ747 (last visited Dec. 10, 2025); Target, *Silent Hill F (PlayStation 5)*, https://www.target.com/p/silent-hill-f-playstation-5/-/A-94662817 (last visited Dec. 10, 2025).

For digital copies, consumers could pre-order directly through platform storefronts including the PlayStation Store, Xbox Store, Steam, Epic Games, Windows, and GOG.com, each of which provided all standard digital pre-order bonuses. *See*

**3. Consumers Nationwide Were Unable to Obtain the Promised Steelbook**

35. When *Silent Hill F* was released, GameStop shipped Steelbook units to its retail stores in quantities that were insufficient to meet the demand (number of pre-orders taken) at each location. Numerous stores received substantially fewer Steelbook units than the number of pre-orders they had accepted, and some stores received none at all.

36. Consumers who pre-ordered online did not receive a Steelbook with their shipment and, upon contacting GameStop, were instructed to visit their local store to locate one.[20] Yet those stores already lacked sufficient inventory to fulfill their respective in-store pre-orders. As a result, both online and in-store pre-order customers were sent from store to store in futile attempts to obtain the bargained for item.

**D. Plaintiff's Experience**

37. In August 2025, Plaintiff Roscamp Wilder pre-ordered *Silent Hill F* from GameStop's website after viewing—and in reliance upon—online advertisements prominently stating: **Pre-order today to get the GameStop Exclusive Steelbook!** The advertisement included a small asterisk with the text: "Limited quantities, while supplies last."

38. Plaintiff understood GameStop's statement that Steelbooks were available in "limited quantities, while supplies last" to mean that she needed to act

---

Konami, *Silent Hill — Products (U.S./English)*, https://www.konami.com/games/silenthill/f/products/us/en/ (last visited Dec. 10, 2025). These digital storefronts provided all publisher-issued pre-order bonuses without requiring consumers to leave their homes or join the scramble of customers sent from store to store in search of GameStop's promised merchandise that, in most instances, was never available.

[20] Online customers designate a local store when creating a GameStop account, and GameStop therefore knows which retail location corresponds to each online preorder.

promptly to secure the advertised item—consistent with how such language is commonly used in retail advertising. Because GameStop was still advertising the promotion, Plaintiff reasonably believed that GameStop had sufficient Steelbook inventory to fulfill pre-orders placed during the promotional period and that the bonus item would be set aside for customers, like her, who pre-ordered in advance. Nothing in the advertisement suggested to Plaintiff that GameStop was accepting pre-orders it knew it could not fulfill.

39. Shortly thereafter, Plaintiff visited her local GameStop storefront and spoke with a supervisor, who informed her that Steelbooks were being allocated first to in-store pre-orders, and that each storefront would be receiving Steelbooks equal to the amount of in-store pre-orders. Relying on that representation, she placed an additional pre-order at the store and paid the corresponding deposit.

40. During the week of release, Plaintiff repeatedly contacted GameStop by phone to confirm that she would receive the Steelbook. On each occasion, she was informed that Steelbooks would be available when she came to the store to pick up her copy of the game.

41. However, on September 24, 2025, the day before release, a GameStop representative informed her that her store had not received a single Steelbook.

42. Plaintiff then contacted every GameStop location in San Diego County and was told that none had received the advertised item. Online discussion forums reflected that customers nationwide were encountering the same issue.

43. Plaintiff chose to pre-order *Silent Hill F* from GameStop because of the promised Steelbook and would have purchased the game from another retailer—such as Amazon, which offered a poster bonus—had she known that GameStop would not, and could not, provide the advertised item.

44. GameStop's conduct deprived Plaintiff of the benefit of her bargain and caused her to expend significant time and effort attempting to obtain the promised item.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action and seeks to certify and maintain it as a class action under Fed. R. Civ. P. 23, individually and on behalf of the class defined below:

> **California Class:**
> All persons in California who pre-ordered *Silent Hill F* from GameStop and were not provided with the advertised Steelbook bonus.

46. Excluded from the Class is: (a) Defendant and any entities in which Defendant has a controlling interest; (b) any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (c) all current employees of Defendant; (d) all governmental entities; and (e) anyone who makes a timely election to be excluded from the Class.

47. Plaintiff reserves the right to modify or amend the definitions of any proposed Class, and/or to add subclasses (collectively, "the Class" as used herein), if necessary before the Court determine whether certification is appropriate and as the Court may otherwise allow.

48. This case is properly brought as a class action under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), and all requirements therein are met for the reasons set forth herein.

49. The claims of all Class members derive directly from a single course of conduct by Defendant. Defendant has engaged in uniform and standardized conduct toward the Class members. Defendant did not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual Class members. Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all *Silent Hill F* pre-order purchasers similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity,

commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

50. Certification of Plaintiff's claims are appropriate because they can prove the elements of their claims on a Class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51. **Numerosity**. The Class is so numerous that joinder of all members is impracticable. GameStop marketed and sold *Silent Hill F* pre-orders nationwide through its thousands of retail stores and its ecommerce platform, and the Steelbook pre-order incentive was promoted across all of these channels. Upon information and belief, thousands of consumers pre-ordered the game from GameStop in reliance on the Steelbook promotion and did not receive the promised item. The precise number of Class Members is unknown to Plaintiff at this time, but the Class is readily ascertainable from GameStop's own pre-order, point-of-sale, online account, and fulfillment records, which identify every consumer who placed a pre-order for *Silent Hill F* and whether they received a Steelbook.

52. **Typicality**. Plaintiff's claims are typical of the claims of the Class. The claims of Plaintiff and Class Members are based on the same legal theories and arise from the same uniform and unlawful conduct by GameStop—namely, advertising and accepting payment for a Steelbook pre-order bonus that GameStop knew or should have known it could not provide. Plaintiff and Class Members were identically affected by this conduct: each pre-ordered *Silent Hill F* from GameStop in reliance on the promise of receiving the Steelbook and suffered the same injury—payment for a pre-order that did not include the promised bonus item. Plaintiff's interests coincide with, and are not antagonistic to, the interests of the Class.

53. **Commonality and Predominance**. Common questions of law and fact exist as to all members of the Class, and these questions predominate over any questions affecting only individual Class members. Common questions include, without limitation:

a. Whether GameStop advertised the Steelbook pre-order incentive to consumers;

b. Whether GameStop had sufficient Steelbook inventory to fulfill the pre-orders it accepted;

c. Whether GameStop tracked pre-order volume and therefore knew or should have known that its Steelbook inventory was insufficient;

d. Whether GameStop continued to promote the Steelbook incentive after inventory was exhausted;

e. Whether GameStop's representations and omissions were false, misleading, or likely to deceive reasonable consumers;

f. Whether GameStop uniformly failed to disclose material information concerning Steelbook availability;

g. Whether GameStop's conduct violated the CLRA, UCL, or FAL;

h. Whether GameStop's conduct constituted an unlawful, unfair, or fraudulent business practice under the UCL;

i. Whether GameStop "adequately disclos[ed] a limitation of quantity" within the meaning of Cal. Civ. Code § 1770(a)(10);

j. Whether GameStop intended, expected, or knew that consumers would rely on the Steelbook incentive when choosing where to pre-order;

k. Whether Plaintiff and Class Members reasonably relied on GameStop's representations when pre-ordering *Silent Hill F*;

l. Whether GameStop's conduct was intentional, reckless, or negligent;

m. Whether Plaintiff and Class Members suffered injury as a result of GameStop's conduct;

n. The appropriate nature and scope of class-wide equitable relief, including restitution, disgorgement, and injunctive or declaratory relief;

o. The appropriate measure of compensatory and statutory damages; and

p. Whether Plaintiff and the Class are entitled to an award of attorneys' fees and costs.

54. These and other questions of law or fact which are common to Plaintiff and Class Members predominate over any questions affecting only individual members of the Class.

55. **Adequacy**. Plaintiff is an adequate Class representative because she has retained counsel competent and experienced in complex class action litigation. Neither Plaintiff nor her counsel has any interests that are adverse to those of other Class Members. Plaintiff is knowledgeable about the subject matter of this action and is committed to prosecuting the case vigorously on behalf of the Class. Plaintiff and her counsel will fairly and adequately protect the interests of all Class Members.

56. **Superiority**. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by each Class Member, while meaningful, is not of such magnitude as to make the prosecution of individualized actions economically feasible. Even if Class Members could afford individual litigation, such cases would impose an undue burden on the courts and risk inconsistent or contradictory results. Individualized litigation also increases delay and expense for all parties. By contrast, classwide adjudication presents far fewer management difficulties and offers the benefits of economies of scale, uniform resolution of common issues, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### Violation of the California Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750, *et seq.*)
### (Against Defendant On Behalf of Plaintiff and the California Class)

57. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. The Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770, prohibits enumerated unfair or deceptive acts or practices undertaken by any person in a transaction intended to result, or that results, in the sale or lease of goods or services to a consumer.

59. Plaintiff is a "consumer" within the meaning of Cal. Civ. Code § 1761(d) because she is an individual who sought or acquired goods for personal, family, or household purposes.

60. Defendant's actions as detailed above constitute violations of the CLRA to the extent that Defendant violated the following provisions of the CLRA:

a. **Cal. Civ. Code § 1770(a)(9)**: Advertising goods with the intent not to sell them as advertised;

b. **Cal. Civ. Code § 1770(a)(10)**: Advertising goods with the intent not to supply reasonably expectable demand, without adequately disclosing a limitation of quantity; and

c. **Cal. Civ. Code § 1770(a)(16)**: Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

61. Plaintiff and California Class members reasonably relied on Defendant's uniform representations that pre-ordering *Silent Hill F* from GameStop would secure the Steelbook bonus item (¶¶ 37-38, 43). Had they known the true facts—that GameStop lacked sufficient Steelbook inventory and would not provide

the promised item—they would not have pre-ordered the game from GameStop or would have paid less for their pre-orders (¶ 43). As a direct and proximate result of Defendant's violations of the CLRA, Plaintiff and California Class members suffered economic injury, including the loss of the promised Steelbook, the loss of the benefit of their bargain, and incidental and consequential damages flowing from their efforts to acquire the bargained for merchandise (¶ 44). Cal. Civ. Code § 1780.

62. On or about October 27, 2025, counsel for Plaintiff and the putative Class served Defendant, via certified mail with return receipt requested, with written notice of its violations of the CLRA. Cal. Civ. Code § 1782(a). The notice requested that Defendant correct, repair, replace, or otherwise rectify the unlawful practices identified therein and advised Defendant that it was required to do so within thirty (30) days, as provided by the CLRA. Cal. Civ. Code § 1782(b). Defendant did not timely correct, repair, replace, or otherwise rectify the issues raised in the notice. Accordingly, Plaintiff seeks damages, including punitive damages, under the CLRA for herself and the California Class.

**COUNT II**
**Violation of the California False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code § 17500)**
**(Against Defendant On Behalf of Plaintiff and the California Class)**

63. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64. The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, prohibits any person or entity, in connection with the sale of goods or services, from making or disseminating any statement concerning such goods or services that is untrue or misleading, and that is known, or that by the exercise of reasonable care should be known, to be untrue or misleading.

65. GameStop made and disseminated advertising to the public—including website listings, mobile app promotions, email solicitations, and in-store signage—

representing that customers who pre-ordered *Silent Hill F* would receive an exclusive Steelbook bonus item (¶¶ 26-31).

66. These advertisements were false and misleading because GameStop did not have, and knew or should have known it did not have, sufficient Steelbook inventory to provide the advertised item to all (or even most) pre-order customers (*see* ¶ 16). GameStop nevertheless continued to disseminate the Steelbook promotion, including up to the day before the game's release (¶¶ 32-33).

67. GameStop's advertisements also omitted material facts by failing to disclose that Steelbook inventory was exhausted or insufficient, despite actively encouraging consumers to continue placing pre-orders (*id.*).

68. Plaintiff and California Class members viewed these advertisements, reasonably relied on them in deciding to pre-order *Silent Hill F* from GameStop, and were thereby induced to make purchases they otherwise would not have made, or to forgo alternative retailer incentives (¶¶ 37-39, 43. *See also* ¶ 34 & n. 19).

69. As a direct and proximate result of Defendant's false and misleading advertising, Plaintiff and California Class members suffered economic injury, including payment for pre-orders that did not include the promised Steelbook and the loss of the benefit of their bargain (¶ 44).

70. Pursuant to Cal. Bus. & Prof. Code §§ 17535, Plaintiff and the California Class seek restitution, injunctive relief, and all other equitable remedies permitted under the FAL.

## COUNT III
**Violation of the California Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**
**(Against Defendant On Behalf of Plaintiff and the California Class)**

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

72. The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, prohibits any unlawful, unfair, or fraudulent business act or practice.

73. Plaintiff and Defendant are each "persons" within the meaning of Cal. Bus. & Prof. Code § 17201. The UCL authorizes suit by consumers on an individual and representative basis. Cal. Bus. & Prof. Code § 17204.

74. "Unfair competition" is defined by Cal. Bus. & Prof. Code § 17200 to include any "unlawful, unfair, or fraudulent business act or practice" and "unfair, deceptive, untrue, or misleading advertising." These definitions are stated in the disjunctive and operate independently.

75. Plaintiff satisfies the UCL's causation and injury-in-fact requirements because GameStop's false and misleading Steelbook pre-order advertising was a substantial factor in Plaintiff's decision to pre-order *Silent Hill F* from GameStop, causing Plaintiff to pay money she otherwise would not have paid and depriving her of the benefit of her bargain (¶¶ 43-44).

**A. <u>Unlawful Prong</u>**

76. Defendant engaged in "unlawful" conduct within the meaning of the UCL by violating the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*., and the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*. The violations of these statutes constitute independent predicate violations sufficient to support liability under the UCL.

77. As described above, GameStop falsely represented that consumers who pre-ordered *Silent Hill F* would receive an exclusive Steelbook bonus item, despite knowing that it did not have sufficient inventory to supply the Steelbook to pre-order customers. These statutory violations independently support liability under the UCL's unlawful prong.

**B. <u>Fraudulent Prong</u>**

78. Defendant's conduct also violates the UCL's fraudulent prong. A business practice is fraudulent under the UCL if members of the public are likely to be deceived. GameStop's advertisements—stating "Pre-order today to get the

GameStop Exclusive Steelbook!"—were likely to mislead reasonable consumers into believing that pre-ordering would secure the Steelbook bonus.

79. GameStop omitted material facts by failing to disclose that Steelbook inventory was exhausted or insufficient to meet demand, even while continuing to promote the incentive to consumers nationwide (¶¶ 26-36).

**C. <u>Unfair Prong</u>**

80. Defendant also engaged in "unfair" business practices within the meaning of the UCL. GameStop accepted pre-order payments while advertising a Steelbook incentive it knew or should have known it could not provide, continued to disseminate Steelbook advertisements after inventory was exhausted, and directed online purchasers to stores that it knew lacked adequate inventory (*id.*).

81. The gravity of this conduct outweighs any conceivable benefit. GameStop's practices offend established public policy favoring truthful marketing and consumer choice and are immoral, unethical, oppressive, and unscrupulous. GameStop could have pursued reasonable alternatives—such as halting the promotion, disclosing the depletion of inventory, or limiting pre-order acceptance—but chose not to do so.

82. Plaintiff and California Class Members suffered substantial injury, including monetary loss and deprivation of the benefit of their bargain. The injury was not outweighed by any countervailing benefit and was not reasonably avoidable because GameStop uniformly represented that pre-ordering from GameStop would secure the Steelbook bonus.

**D. <u>Injury and Relief</u>**

83. As a direct and proximate result of Defendant's unlawful, unfair, and fraudulent practices, Defendant obtained money from Plaintiff and California Class Members that it had no right to retain and was unjustly enriched thereby.

84. Plaintiff and Class Members suffered injury in fact, including losing money and property as a result of GameStop's conduct.

85. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks restitution, disgorgement of all monies wrongfully obtained, and injunctive relief requiring GameStop to cease the practices described herein and to provide accurate and truthful advertising regarding pre-order incentives.

86. In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees, which are available to prevailing plaintiffs in class action cases such as this.

## COUNT IV
## Breach of the Implied Covenant of Good Faith and Fair Dealing
## (Against Defendant On Behalf of Plaintiff and the California Class)

87. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88. A valid and enforceable contract existed between Plaintiff and Defendant when Plaintiff and Class Members paid deposits or the full purchase price to pre-order *Silent Hill F* from GameStop. The terms of that contract required GameStop to provide the goods and associated pre-order incentives represented at the time of sale—including the Steelbook bonus item—or, at minimum, to refrain from conduct that would deprive consumers of the benefit of their bargain.

89. California law implies a covenant of good faith and fair dealing in every contract.[21] The covenant requires that neither party engage in conduct that, while not breaching an express contractual term, nonetheless frustrates the other party's rights to the benefits of the agreement. It also obligates each contracting party to do

---

[21] *See Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 160 Cal. Rptr. 3d 718, 730 (Ct. App. 2013).

everything the contract presupposes it will do to accomplish the agreement's purposes.[22]

90. Plaintiff and Class Members performed all conditions, covenants, and obligations required of them under the contract, or performance was excused (*see* ¶¶ 31, 39). Plaintiff and Class Members paid GameStop for their pre-orders in reliance on Defendant's representations concerning the associated benefits of those transactions (¶¶ 31, 37-39).

91. Defendant breached the implied covenant of good faith and fair dealing by, among other things: (a) promoting and accepting payment for a Steelbook pre-order incentive it knew or should have known it could not provide (¶¶ 32-34, 39-40); (b) continuing to solicit pre-orders after Steelbook inventory was depleted (*id.*); (c) failing to disclose material information concerning Steelbook availability (*id.*); (d) directing customers to search multiple retail locations for Steelbooks Defendant knew were unlikely to exist (¶¶ 29, 36, 42); and (e) otherwise acting in a manner that unfairly interfered with Plaintiff's and Class Members' rights to receive the benefits of their agreements with GameStop.

92. Defendant's conduct frustrated the central purpose of the pre-order agreement—namely, that consumers who pre-ordered *Silent Hill F* from GameStop would receive the "exclusive bonus" item represented at purchase. A breach of a specific express contractual term is not required to establish liability for breach of the implied covenant where, as here, Defendant's conduct deprived Plaintiff and Class Members of the benefits reasonably expected under the contract.

93. As a direct and proximate result of Defendant's breach, Plaintiff and Class Members suffered damages, including the loss of the benefit of their bargain. Cal. Civ. Code § 3300.

---

[22] *See also* Cal. Civ. Code § 1708 ("Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights.").

94. Plaintiff and Class Members seek all damages, restitution, and other relief available under California law for Defendant's breach of the implied covenant of good faith and fair dealing.

**COUNT V**
**Fraud in the Inducement**
**(Against Defendant On Behalf of Plaintiff and the California Class)**

95. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

96. GameStop made affirmative misrepresentations and material omissions to Plaintiff and Class Members concerning the availability of the exclusive Steelbook bonus item for consumers who pre-ordered *Silent Hill F*. Beginning in July 2025 and continuing through September 24, 2025, GameStop advertised on its website, mobile application, email solicitations, and in-store signage that customers who pre-ordered the game would receive a GameStop Exclusive Steelbook (¶¶ 26-31, 37-40). GameStop personnel further reiterated these representations verbally to consumers who inquired in stores, including informing Plaintiff that Steelbooks would be allocated in quantities matching in-store pre-orders (*id*.).

97. These representations were false when made. GameStop knew, or acted with reckless disregard for the truth, that it did not have and would not have sufficient Steelbook inventory to fulfill the pre-orders it was actively soliciting. GameStop tracked pre-order volume and Steelbook allocations in real time and therefore knew that available inventory was far lower than the number of pre-orders taken (*see* ¶ 16 (citing GameStop Corp., Annual Report (Form 10-K) (Jan. 28, 2017); *see also* n. 20). GameStop also concealed and failed to disclose material information—specifically, that Steelbook quantities were insufficient, that many stores would receive none, and that online orders would be shipped without the Steelbook. These omissions rendered GameStop's affirmative statements misleading.

98. GameStop made these representations and omissions with the intent to induce Plaintiff and Class Members to pre-order *Silent Hill F* from GameStop. The purpose of the Steelbook incentive was to drive pre-order sales, to steer customers away from alternative retailers and digital storefronts, and to secure payment in advance of release. GameStop intended that consumers rely on its representations regarding bonus availability when choosing where to pre-order (*see* n. 19).

99. Plaintiff and Class Members justifiably relied on GameStop's statements. Plaintiff viewed GameStop's online advertisements in August 2025 and pre-ordered *Silent Hill F* through GameStop's website in reliance on those representations (¶ 37). Plaintiff then visited a GameStop store, where a supervisor confirmed that Steelbooks would be distributed in quantities matching the store's pre-orders (¶ 39). Plaintiff relied on those assurances and placed an additional in-store pre-order. Plaintiff also contacted GameStop multiple times during the week of release and was repeatedly told that Steelbooks would be available at pickup (¶ 40). Many Class Members similarly relied on GameStop's uniform advertising and verbal assurances and chose GameStop because of the Steelbook, foregoing alternative retailers that offered other incentives or guaranteed digital benefits.

100. Had Plaintiff and Class Members known the true facts—that GameStop lacked sufficient Steelbooks to fulfill the pre-orders it accepted and that they were unlikely to receive the promised item—they would not have pre-ordered from GameStop and would have purchased from another retailer or digital platform (¶ 43).

101. As a direct and proximate result of GameStop's fraudulent inducement, Plaintiff and Class Members suffered damages, including payment for pre-orders that did not include the promised Steelbook, the loss of the benefit of their bargain, and other incidental or consequential damages incurred in attempting to locate the item. Cal. Civ. Code § 3333.

102. Because GameStop's conduct was undertaken knowingly and with the intent to defraud, Plaintiff and Class Members seek punitive damages to deter similar misconduct and to punish GameStop for its wrongful acts. Cal. Civ. Code § 3294.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all members of the California Class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Declaring that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B. Declaring that the conduct alleged herein violates the California Consumer Legal Remedies Act, the California False Advertising Law, the California Unfair Competition Law, and applicable common-law principles;

C. Enjoining Defendant from continuing the unlawful, unfair, fraudulent, and deceptive practices alleged herein, and requiring Defendant to issue corrective advertising and implement appropriate disclosure and compliance measures regarding pre-order incentives;

D. Ordering restitution and disgorgement of all monies wrongfully obtained from Plaintiff and Class Members through Defendant's conduct;

E. Awarding actual, compensatory, statutory, and punitive damages to Plaintiff and Class Members in an amount to be determined at trial;

F. Ordering Defendant to pay attorneys' fees, litigation costs, and expenses pursuant to the CLRA, Cal. Civ. Code § 1780(e), Cal. Bus. & Prof. Code §§ 17203 and 17535, and all other applicable law;

G. Awarding pre-judgment and post-judgment interest as permitted by law; and

H. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Dated: January 14, 2026

Respectfully submitted,

By: */s/ James C. Shah*

James C. Shah (CA Bar No. 260435)
Kolin C. Tang (CA Bar No. 279834)
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Phone: 866-540-5505
Fax: 866-300-7367
jcshah@millershah.com
kctang@millershah.com

Timothy N. Matthews (*pro hac vice* forthcoming)
Dylan Altland (*pro hac vice* forthcoming)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
tnm@chimicles.com
dda@chimicles.com

***Counsel for Plaintiff and the Proposed Class***